## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN KUGLER,** | ) | |
| | ) | |
| **Plaintiff/Counter-Defendant,** | ) | **16 C 8305** |
| | ) | |
| **v.** | ) | **Judge John Z. Lee** |
| | ) | |
| **BOARD OF EDUCATION OF THE** | ) | |
| **CITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendant/Counter-Plaintiff.** | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff John Kugler ("Kugler") filed this suit against Defendant Board of Education of the City of Chicago ("the Board") under 42 U.S.C. § 1983, alleging that certain Board actions have violated his rights under the First Amendment. In turn, the Board has filed a counterclaim for a declaratory judgment affirming that its actions toward Kugler are reasonable and comport with the First Amendment, as well as Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, and the Illinois Human Rights Act (IHRA), 775 Ill. Comp. Stat. 5/1-101 *et seq.* Kugler has moved to dismiss the counterclaim under Federal Rule of Civil Procedure ("Rule") 12(b)(6), or in the alternative, to strike the counterclaim under Rule 12(f). For the reasons that follow, Kugler's motion [38] is granted in part and denied in part.

## **Factual Background**[1]

This lawsuit arises from a letter dated May 6, 2016, by which the Board restricted Kugler's access to Board personnel and property. Countercl. ¶¶ 31–32, ECF No. 21. The letter informed Kugler that restrictions were being imposed due to his "disruptive, violent, and threatening actions," and recounted specific incidents of such behavior. *See id.* ¶¶ 16–32; *see also id.*, Ex. 2, 5/6/16 Letter from Board to Kugler ("5/6/16 Letter"). The Board cited Kugler's verbally abusive and physically threatening behavior during various school meetings and grievance hearings while acting as a Chicago Teacher's Union ("CTU") representative. *Id.* ¶¶ 16–24; *see also* 5/6/16 Letter. The letter also discussed an email Kugler had sent that the Board deemed a potential security threat. Countercl. ¶¶ 27–28.

As a result of his conduct, and as explained in the letter, the Board has prohibited Kugler from entering Board property, except to attend public meetings or school activities involving his children, and then only when notice is provided to school officials. *Id.* ¶ 5. In addition, the letter imposed certain restrictions on Kugler's communications with Board employees. *See id.*; 5/6/16 Letter. On May 17, 2016, the Board issued a separate letter clarifying the latter restriction as it pertains to communications with CTU members versus Board management. Countercl. ¶ 33; *see also id.,* Ex. 3, 5/17/16 Letter from Board to Kugler.

---

[1]    The factual background is based on facts alleged in the Board's counterclaim, which are presumed true on review of Kugler's motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Subsequently, on August 24, 2016, Kugler filed this suit, alleging that the restrictions violate his rights under the First Amendment. *Id.* ¶ 34; *see also* Compl., ECF No. 1. In its counterclaim, the Board seeks a declaratory judgment that:

i.   The First Amendment does not prohibit the Board from imposing reasonable restrictions on Kugler to prevent him from engaging in verbal or physical abuse, including the use of profanities and vulgarities, directed at school principals, Board hearing officers, and other Board employees;

ii.  The First Amendment does not prohibit the Board from imposing reasonable restrictions on Kugler to prevent him from harming school principals, Board hearing officers, or other Board employees or threatening or suggesting harm to school principals, Board hearing officers, or other Board employees or Board property; and

iii. The Board may impose reasonable restrictions on Kugler to foster a workplace that is not hostile and does not violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, or the Illinois Human Rights Act, 775 ILCS 5/1-101.

Countercl. ¶ 46.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges whether a complaint states a claim on which relief may be granted. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under the federal notice pleading standards, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint "need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo*, 526 F.3d at 1081 (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 8(a)(2).

3

These pleading standards are equally applicable to counterclaims. *See Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.,* 250 F.3d 570, 574 (7th Cir. 2001) (applying the same standard in reviewing a motion to dismiss a counterclaim as with a motion to dismiss a complaint).

In reviewing a motion to dismiss a counterclaim under Rule 12(b)(6), a court must accept as true all well-pleaded allegations in the counterclaim and must draw all possible inferences in the counter-plaintiff's favor. *See Tamayo*, 526 F.3d at 1081. In addition, while reviewing a Rule 12(b)(6) motion, a court may consider not only the allegations in the counterclaim itself, but also any documents attached to the counterclaim. *See Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored because they "potentially serve only to delay." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). But when "motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Id.* A district court "has considerable discretion in striking any redundant, immaterial, impertinent or scandalous matter." *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009).

<u>Analysis</u>

Kugler raises three principal arguments in support of his motion, contending that the counterclaim: (1) fails to satisfy the Article III case-or-controversy requirement; (2) is redundant of the complaint; and (3) should be dismissed under the Court's discretion to do so in declaratory judgment actions.  The Court will first address each of these arguments as to the counterclaim's allegations arising under the First Amendment.  The Court will then turn to the counterclaim's allegations arising under Title VII and the IHRA.

## I.    Article III Case-or-Controversy Requirement

First, Kugler argues that the Court lacks jurisdiction over the counterclaim because it concerns future hypothetical events, and therefore does not concern a live case or controversy.  He maintains that the declaration sought by the Board is "advisory in nature[ ] and cannot serve as a general declaration of the defendant's rights as to persons other than the plaintiff."  Pl.'s Mot. Dismiss at 1, ECF No. 38.

The Declaratory Judgment Act ("DJA") "is not an independent source of federal subject matter jurisdiction."  *lGNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995).  But, assuming an independent source of jurisdiction, *id.*, the DJA provides that a court "may declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201(a).  Under the DJA, district courts have "'unique and substantial discretion in deciding whether to declare the rights of litigants.'"  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (quoting *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286 (1995)).  The DJA restricts courts, however, from "exercis[ing] this discretionary power in the absence of an 'actual

controversy' between the parties." *Deveraux v. City of Chi.*, 14 F.3d 328, 330 (7th Cir. 1994).

"The DJA's 'actual controversy' requirement is equivalent to Article III's case-or-controversy requirement." *Duehning v. Aurora E. Unified Sch.*, 102 F. Supp. 3d 968, 980 (N.D. Ill. 2015) (citing *MedImmune*, 549 U.S. at 126–27). Yet, assessing whether a ripe controversy exists in this context is complicated because, to some extent, all declaratory judgment actions seek preemptive relief. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008). Thus, "'it would be difficult, if it would be possible, to fashion a precise test'" to distinguish between an abstract question and an actual controversy as contemplated by the DJA. *Deveraux*, 14 F.3d at 330 (7th Cir. 1994) (quoting *Maryland Cas. Co.*, 312 U.S. at 273).

Fortunately, the Supreme Court has provided some guidance in this area, reiterating that "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Wis. Cent.*, 539 F.3d at 759 (quoting *MedImmune*, 549 U.S. at 127).

Here, unlike many declaratory judgment actions brought in advance of an impending suit, the Board brings its declaratory judgment action as a counterclaim. The immediacy and reality of the controversy between Kugler and the Board is evidenced by the fact that litigation is already pending between the parties. There is certainly a live dispute between parties having adverse interests: Kugler seeks

6

relief from the restrictions placed upon him by the Board, while the Board seeks to declare that those restrictions are reasonable. Kugler admits as much in his reply. *See* Pl.'s Reply at 2, ECF No. 52.

But Kugler goes on to interpret the Board's counterclaim as purportedly seeking "guidance as to what restrictions are 'reasonable' or in what circumstances" beyond the acknowledged controversy at issue. *Id.* at 4. The Court does not interpret the Board's counterclaim in this manner. On the contrary, the counterclaim seeks a ruling that the restrictions currently in force against Kugler are permissible under the First Amendment. Neither the restrictions imposed on Kugler nor the circumstances that prompted them are hypothetical. Thus, the Court finds that the counterclaim alleges facts sufficient to establish an actual controversy within the meaning of the DJA and within this Court's Article III jurisdiction. Kugler's motion to dismiss the counterclaim on this basis is therefore denied.

## II. Redundancy in Counterclaim

Alternatively, Kugler moves to strike the counterclaim for redundancy pursuant to Rule 12(f). He argues that the counterclaim is the mirror image of the complaint and adjudication of Kugler's claims would provide the Board with the relief it seeks. Pl.'s Mot. Dismiss at 2. Kugler is correct to point out that counterclaims that "merely restate[] an issue already before [the] Court" may be dismissed. *United States v. Zanfei*, 353 F. Supp. 2d 962, 965 (N.D. Ill. 2005). And, the Court acknowledges that the proposed declarations in sections (i) and (ii) are seemingly the inverse of Kugler's First Amendment claims. But Courts are

reluctant to strike counterclaims as redundant unless there exists certainty that adjudication of the plaintiff's claims would obviate the need for declaratory relief. *See, e.g., BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, No. 07-CV-186-DRH, 2010 WL 145792, at *2–3 (S.D. Ill. Jan. 12, 2010); *see also* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1406 (3d ed. 2017) ("[T]he safer course for the court to follow is to deny a request to dismiss a counterclaim for declaratory relief unless there is no doubt that it will be rendered moot by the adjudication of the main action."). At such an early stage, it is difficult to assess whether the factual and legal issues raised by each party will truly be repetitious. *See Balmoral Racing Club, Inc. v. Churchill Downs, Inc.*, No. 11 C 1028, 2011 WL 6009610, at *2 (N.D. Ill. Nov. 29, 2011) ("[The court] will have a much better handle on the issue closer to trial."). Especially here, where there are myriad legal theories under which the parties could present First Amendment claims and defenses, it would be premature to conclude that adjudication of Kugler's claims would fully address the Board's counterclaim. Even if these portions of the counterclaim are ultimately redundant, leaving the counterclaims pending will not result in any prejudice to Kugler and would be the more prudent course. *See, e.g., id.*[2]

---

[2] The Court notes that "prejudice need not be shown in support of a motion to strike." *Lincoln Nat'l. Corp. v. Steadfast Ins. Co.*, No. 1:06-CV-00058, 2006 WL 1660591, at *2 (N.D. Ind. June 9, 2006); *see* Pl.'s Reply at 3. Still, courts routinely consider "whether the plaintiff would suffer prejudice as a result of an allegedly duplicative counterclaim." *Cont'l Cas. Co. v. Duckson*, No. 11-CV-00459, 2011 WL 2293873, at *2 (N.D. Ill. June 9, 2011); *see also Balmoral*, 2011 WL 6009610, at *2; *VW Credit, Inc. v. Friedman & Wexler, LLC*, No. 09 C 2832, 2010 WL 2330364, at *2 (N.D. Ill. June 7, 2010).

### III.    Discretion to Dismiss Declaratory Judgment Actions

Finally, Kugler appeals to the Court's discretion to dismiss declaratory judgment actions.  District courts have discretion whether to hear a declaratory judgment action even if it satisfies the actual controversy requirement.  *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir. 1994).  "But if the declaratory judgment will clarify and settle the disputed legal relationships and afford relief from the uncertainty and controversy that created the issues, it is usually resolved rather than dismissed." *Id.* at 578.  The Seventh Circuit has provided five questions for district courts to consider when conducting this analysis:

> (1) whether the judgment would settle the controversy;
>
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*";
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
> (5) whether there is an alternative remedy that is better or more effective.

*Id.* at 579 (citing *Nationwide Mut. Fire Ins. Co. v. Willenbrink*, 924 F.2d 104, 105 (6th Cir. 1991)).

Here, under the first factor, the declaratory judgment would settle the controversy.  Entering a declaratory judgment order that the First Amendment does not prohibit the Board from imposing its restrictions on Kugler would likely

accompany a finding that the restrictions imposed by the Board did not violate Kugler's First Amendment rights.

The second factor is satisfied because the declaratory judgment would clarify the legal relations between the parties. The Court's ruling on the reasonableness of the restrictions against Kugler would provide clarity as to Kugler's role as both a CTU representative and parent of students attending a Chicago public school.

With regard to the third factor, the Court need not be concerned with procedural fencing or a race to the courthouse because the declaratory action was filed as a counterclaim.

Likewise, the fourth factor is irrelevant to the instant case because there is no danger of encroaching on state jurisdiction.

Finally, in considering the fifth factor, judgment on the complaint would not necessarily provide an adequate alternative remedy to the declaratory relief sought by the Board in its counterclaim. As discussed above, the declaratory judgment action may raise issues beyond the scope of Kugler's complaint.

For these reasons, the Court will not exercise its discretion to dismiss the declaratory judgment action.

## IV. Allegations Arising Under Title VII and the IHRA

In addition to its allegations arising under the First Amendment, the Board seeks a declaration in its counterclaim that its actions are reasonable to ensure that the Board does violate Title VII and the IHRA. *See* Countercl. ¶ 46 (seeking a declaratory judgment that "[t]he Board may impose reasonable restrictions on

Kugler to foster a workplace that is not hostile and does not violate Title VII . . . or the [IHRA]").  Kugler argues that this portion of the counterclaim should be dismissed insofar as it asserts that compliance with Title VII or the IHRA is a valid defense to violating the First Amendment.  Pl.'s Reply at 4.

It is unclear what precise relief the Board is seeking from the Court by way of this claim or how the Court is to adjudicate it.  To the extent that the Board is requesting that the Court find that the restrictions imposed on Kugler were necessary to avoid liability under Title VII or the IHRA, such a claim is unripe and devolves into a hypothetical exercise.  After all, there is no allegation that anyone has threatened to bring a Title VII or IHRA claim against the Board as a result of Kugler's actions, nor is there any basis for the Court to find that such a claim would be successful.  Indeed, in order to adjudicate this claim, the Court would have to assess the likelihood that such a Title VII or IHRA claim would succeed (let alone whether such a claim would even be filed), which in turn would raise a host of other speculative issues unamenable to adjudication here.  For example, did Kugler intentionally target his actions to members of a protected class?  (There is no allegation that this was so.)  If the Board does not curtail Kugler's actions, can a potential claimant plausibly assert that the Board's inaction was intended to harm members of a protected class?  Are the nature and extent of Kugler's (who is not an employee or agent of the Board) actions sufficient to create a hostile environment actionable under Title VII or the IHRA?  And so on.

As a result, the Board's claim invoking Title VII and the IHRA does not reflect sufficiently real and immediate circumstances that permit the entry of a declaratory judgment. *See Wis. Cent.*, 539 F.3d at 759 (quoting *MedImmune*, 549 U.S. at 127). There simply is no live controversy under Title VII or the IHRA; the dispute between the Board and Kugler centers exclusively on the First Amendment. This is not to say that the Board cannot argue in defense of the restrictions that it has an interest in maintaining a discrimination-free work setting for its employees (whatever the merits of such an argument may be). But the claim at issue does not do this. For these reasons, the allegations in the Board's counterclaim pertaining to Title VII and the IHRA are dismissed without prejudice. If the Board can present a real and immediate controversy arising under these statutes, it may amend its counterclaim accordingly.

## **<u>Conclusion</u>**

For the reasons articulated herein, Kugler's motion to dismiss, or in the alternative, strike [38] is granted in part and denied in part. The allegations in the counterclaim pertaining to Title VII and the IHRA are dismissed without prejudice. Insofar as the Board wishes to amend these allegations, it is granted leave to do so by August 10, 2017. The motion is denied in all other respects.


**IT IS SO ORDERED.**                    **ENTERED   7/26/17**

_____
**John Z. Lee**
**United States District Judge**

13